UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**  5:26-cv-03481-BFM                    **Date:**  July 2, 2026

**Title:**      *Peter Fakhry Zarief Kamel v. Ernesto Santacruz Jr. et al.*

===================================================================

Present:   The Honorable Brianna Fuller Mircheff, United States Magistrate Judge

| Christianna Howard | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff | Attorneys Present for Defendant |
| N/A | N/A |

**Proceedings:**    **(In Chambers) Order Granting Petition (ECF 1)**

Petitioner Peter Fakhry Zarief Kamel filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on June 24, 2026. (ECF 1 ("Pet.").) He also filed an Ex Parte Application for Temporary Restraining Order. (ECF 3.) Respondents filed their Answer (ECF 9 ("Answer").) Having reviewed those two filings, the Court declines to wait for Petitioner's reply, and instead, **grants** the Petition. The Ex Parte Application (ECF 3) is **denied as moot**.

## I.    Factual Background

Petitioner is a noncitizen who is currently detained at the Adelanto ICE Processing Center, within the Central District of California. (Pet. ¶¶ 1, 17.) He entered the United States in October 2024 and was detained by U.S. Border Patrol after entry. (Pet. ¶ 39.) He was placed in removal proceedings and released on his own recognizance. (Pet. ¶¶ 40-42; *see also* ECF 3-2 at 12 (order of release on conditional parole under INA 236).)

After being released from custody, Petitioner resided in California and was enrolled in and supervised through the ISAP program. (Pet. ¶ 43.) He subsequently retained counsel and filed an application for asylum and withholding of removal. (Pet. ¶ 44.) Petitioner alleges that he generally

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**  5:26-cv-03481-BFM                    **Date:**  July 2, 2026

**Title:**        *Peter Fakhry Zarief Kamel v. Ernesto Santacruz Jr. et al.*

===================================================================

complied with the conditions of his release until he was detained at his latest check-in on May 21, 2026, without prior explanation or hearing. (Pet. ¶¶ 3, 47-48.) DHS subsequently asserted that he was detained for noncompliance with the ISAP program. (Pet. ¶ 48; *see also* ECF 3-2 at 15 (I-213 alleging seven missed biometric check-ins over the course of ten months).) Petitioner requested, and was denied, a post-detention bond hearing; the IJ concluded he was not eligible for a bond hearing under *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025). (ECF 3-2 at 18-19.)

## II.    Analysis

Petitioner argues that his detention violates due process and asks for release. (Pet. ¶¶ 53-57.) Respondents oppose that request, arguing that Petitioner's detention was justified because he violated the conditions of his release, and further argues that his relief should be limited to a bond hearing. (Answer at 4-5.)

After reviewing both parties' contentions, the Court concludes that Petitioner's claim is meritorious. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**  5:26-cv-03481-BFM                          **Date:**  July 2, 2026

**Title:**        *Peter Fakhry Zarief Kamel v. Ernesto Santacruz Jr. et al.*

======================================================================

01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

     1.    *Protected liberty interest*

On the first point, the Court finds that Petitioner has a protected liberty interest in remaining at liberty in the community absent sufficient justification for his re-detention.

Conditional release from physical restraint may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Once an individual is granted conditional release, therefore, he may have a protected liberty interest in remaining in the community—and an attendant right to procedural protections before that liberty is revoked. *See id.* (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). In deciding whether a specific form of conditional release gives rise to a protected liberty interest, courts compare the form of conditional release at issue with the parolee's liberty interest as described in *Morrissey v. Brewer*, a seminal case in this area. *See González-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole enables a parolee "to do a wide range of things" available to individuals who have never been convicted of any crime—to live at home, work, be with his friends and family, and "form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," including monitoring and requiring authorization to work and travel, the parolee's "condition is very

Page **3** of **9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**  5:26-cv-03481-BFM                          **Date:**  July 2, 2026

**Title:**        *Peter Fakhry Zarief Kamel v. Ernesto Santacruz Jr. et al.*

========================================================================

different from that of confinement in a prison." *Id.* Moreover, a parolee "relie[s] on at least an implicit promise that parole will be revoked only if she fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and as such, a parolee possesses a protected interest in his continued liberty. *Id.* at 481-84.

Petitioner was granted release on his own recognizance pending completion of his removal proceedings. His release was an implicit promise that he would be able to stay in the community for the duration of his administrative proceedings so long as he complied with the conditions of his release. His conditional released permitted him to live in the community, which he has done since his release. (Pet. ¶ 43.) The Court thus easily concludes—as have many courts in this Circuit—that once Petitioner was released on bond, he gained a protected liberty interest in remaining out of custody. *E.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody"); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (finding that "the government's decision to release an individual [from immigration custody] creates an implicit promise that the individual's liberty will be revoked only if they fail to abide by the conditions of their release") (cleaned up); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**  5:26-cv-03481-BFM                          **Date:**  July 2, 2026

**Title:**  *Peter Fakhry Zarief Kamel v. Ernesto Santacruz Jr. et al.*

==================================================================

2.      *Process owed in connection with re-detention*

Given that Petitioner has a protected liberty interest in his conditional release, the question is what process he is owed before the government would take that liberty interest away. Petitioner claims that due process required process *before* he was taken into custody. (Pet. ¶ 61.) He thus argues that the appropriate habeas remedy is for him to be released back to the community. (Pet. at 12.) The Court agrees.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming, without deciding, that *Mathews v. Eldridge* applies in immigration detention context, and collecting authority applying *Mathews* to immigration detention). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Each of the three *Mathews* factors supports Petitioner's constitutional right to process *before* he was re-detained.

As to the first factor, and as set out in the prior section, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in his home and maintaining his relationships in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**  5:26-cv-03481-BFM                    **Date:**  July 2, 2026

**Title:**      *Peter Fakhry Zarief Kamel v. Ernesto Santacruz Jr. et al.*

====================================================================

community. *See Ortega*, 415 F. Supp. 3d at 970 (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Turning to the second *Mathews* factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide him with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) And where a petitioner has not received any custody hearing or other process in connection with the revocation of his parole, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Indeed, Respondents have not identified any process in place to ensure that individuals in Petitioner's position are not detained improperly. Civil immigration detention is constitutionally permissible only to prevent flight or protect against danger to the community. *See Zadvydas*, 533 U.S. at 690. Evaluation of the appropriateness of detention under § 1226(a) is keyed to those same two factors. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). It was those factors that were necessarily found when Petitioner was initially released. (Pet. ¶ 35); *see Noori v. LaRose*, ___ F. Supp. 3d ___, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *13 (S.D. Cal. Oct. 1, 2025) ("In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'"); *Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted) (a petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**  5:26-cv-03481-BFM                    **Date:**  July 2, 2026

**Title:**        *Peter Fakhry Zarief Kamel v. Ernesto Santacruz Jr. et al.*

=====================================================================

to the community or a flight risk"). And once he was released, he had a liberty interest "in remaining at liberty unless [he] no longer meets those criteria." *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *13 (E.D. Cal. Sept. 5, 2025) (cleaned up).

In the context of civil immigration detention, then, it is not solely the violation itself that is compelling, but what a violation says about whether the individual poses a risk of flight or danger. *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025) (rejecting argument that ICE can re-detain based on "purely technical violations," like being late to a check-in, without regard to whether that technical violation means that one is a flight risk or danger); *Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) (same).

And as such, it does not "necessarily follow" from the allegation of a violation "that Petitioner can be detained for those violations without a hearing. That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Here, it does not appear that Petitioner was notified of the reasons for his detention, or given a chance to dispute that such violations occurred or to persuade the decisionmaker that those violations did not make him a flight risk—not before he was detained, nor even after he was detained. Notice and an opportunity to respond "'at a meaningful time and in a meaningful manner'" is the essence of procedural due process, *Mathews*, 424 U.S. at 333, and it was jettisoned here.

Finally, Respondents have not articulated any countervailing government interest—the third and final *Mathews* factor—that supports providing this process only after Petitioner's parole has been revoked. Due

Page **7** of **9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**  5:26-cv-03481-BFM                    **Date:**  July 2, 2026

**Title:**         *Peter Fakhry Zarief Kamel v. Ernesto Santacruz Jr. et al.*

========================================================================

process "usually" requires a hearing *before* the State deprives a person of liberty or property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. *Id.* at 128. But neither of those exceptions appears to apply here. Respondents do not argue that quick action was necessary here. Indeed, simply waited around until he arrived, faithfully, for his next appointment. On these facts, any possible claims of urgency are substantially undermined.

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." *Ortega*, 415 F. Supp. 3d at 970; *see also Morrissey*, 408 U.S. at 483 (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the *Mathews* factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which was accompanied by *no* process—violates the Due Process Clause.

## III.   Appropriate Remedy

As has been found in countless similar cases in this Circuit, the appropriate remedy in such cases is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on the conditions that were initially imposed. *E.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); *Jasbin v. Warden*, No. 26-CV-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that petitioner was only entitled to bond hearing as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**  5:26-cv-03481-BFM                    **Date:**  July 2, 2026

**Title:**        *Peter Fakhry Zarief Kamel v. Ernesto Santacruz Jr. et al.*

===================================================================

Maldonado Bautista class member); *Prior v. Chestnut*, No. 1:25-CV-01131-JLT-EPG-HC, 2026 WL 309560, at \*9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

### IV.    Conclusion

Accordingly, Claim Two in the Petition (ECF 1) is granted. Petitioner Peter Zarief Kamel (A# 226-145-279) shall be immediately released on the conditions previously imposed.

Claim One in the Petition is dismissed as moot in light of the relief granted on Claim Two.

Petitioner's Ex Parte Application for Temporary Restraining Order (ECF 3) is **denied as moot** in light of the relief granted in this Order.

Petitioner's counsel shall file a status report confirming Petitioner's release within three days of his release from custody; if release is delayed for any reason, Petitioner shall promptly notify the Court. Upon receipt of confirmation that Petitioner has been released, judgment will issue and the Court will close the case.

**IT IS SO ORDERED**

cc:    Counsel of Record

Initials of Preparer:    ch